Guy B. Wallace (State Bar No. 176151)
gwallace@schneiderwallace.com
Sarah Colby (State Bar No. 194475)
scolby@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.T., by and through her guardian ad litem and parent, DELENA SERAFIN, on behalf of herself and all others similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>CALIFORNIA DEPARTMENT OF SOCIAL SERVICES; WILL LIGHTBOURNE, in his official capacity; PAT LEARY, in her official capacity; PAMELA DICKFOSS, in her official capacity; YMCA OF THE EAST VALLEY; and DOES 1-100 inclusive;<br><br>Defendants. | **CASE NO.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

### INTRODUCTION

1.    Plaintiff brings this case to compel California's Department of Social Services to rescind or modify a state regulation which discriminates against children with mobility disabilities in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et. seq.*

1  ("Title II").  Plaintiff also seeks damages and injunctive relief against the YMCA of the East

2  Valley to enjoin it from discriminating against children with disabilities in its child care programs

3  and services and relying on state licensing regulations to do so, in violation of Title III of the ADA,

4  42 U.S.C. §§ 12181 *et. seq.* ("Title III"), and the Unruh Civil Rights Act, Cal. Civ. Code §§ 51 *et.*

5  *seq.* ("Unruh Act").

6          2.      Title 22 of the California Code of Regulations, section 101161 states that "[c]hild

7  care centers or rooms approved for ambulatory children only shall not be used by nonambulatory

8  children."  "Nonambulatory persons" include "persons who depend upon mechanical aids such as

9  crutches, walkers, and wheelchairs."  Cal. H & S. Code § 13131.

10         3.      California's Department of Social Services (CDSS) licenses and regulates child care

11 centers in California.  It has promulgated the regulations under Title 22, which lay out

12 requirements for obtaining and retaining a license to operate a child care facility in this state.

13 Within CDSS, the Community Care Licensing Division (CCLD) is responsible for these duties.

14         4.      Section 101161 of Title 22 discriminates against persons with mobility disabilities

15 and violates Title II of the ADA.  By promulgating and enforcing Section 101161, CDSS has

16 officially sanctioned discrimination on the basis of disability in child care centers.  Rather than

17 require that such centers obtain fire clearances to permit the participation of non-ambulatory

18 children, CDSS permits child care centers to disregard state and federal laws prohibiting disability

19 discrimination and then rely on the regulation to justify such discrimination.

20         5.      The YMCA of the East Valley provides before- and after-school care at Franklin

21 Elementary School within the Redlands Unified School District.  In obtaining its child care license

22 and subsequent license renewals from CDSS, the YMCA and other child care facilities throughout

23 the state have not requested clearances to admit nonambulatory participants.  The YMCA and other

24 child care facilities throughout California then use their lack of a nonambulatory clearance to deny

25 participation by children with mobility disabilities in their programs.

26         6.      The CDSS is aware that licensed child care providers rely on its regulation as a

27 pretext for disability discrimination in violation of the ADA and the Unruh Act.  However, CDSS

28

1  has not taken any action to rescind or modify the regulation to eliminate its discriminatory impact

2  on children with mobility disabilities.

3  **JURISDICTION AND VENUE**

4  7.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 for violations

5  of the ADA, 42 U.S.C. §§ 12101 *et seq*. It has supplemental jurisdiction pursuant to 28 U.S.C. §

6  1367 over Plaintiff's attendant and related claim arising from the same facts brought under the

7  Unruh Civil Rights Act, California Civil Code §§ 51 *et seq*.

8  8.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b),

9  because the YMCA of the East Valley resides in San Bernardino County in this District, and the

10  acts upon which this action is based occurred in part in this District.

11  **PARTIES**

12  9.     Named Plaintiff C.T. is 8 years old.  She has cerebral palsy and uses a wheelchair for

13  mobility.  She lives with her mother in Redlands, California.  Her mother, DELENA SERAFIN,

14  has filed a petition to be appointed C.T.'s guardian ad litem for the purposes of prosecuting this

15  case.  C.T. brings her claim for declaratory and injunctive relief under Title II of the ADA on her

16  own behalf and on behalf of all others similarly situated.

17  10.     Defendant California Department of Social Services ("CDSS") licenses and regulates

18  child care centers in California.  It has promulgated the regulations under Title 22, which lay out

19  requirements for obtaining and retaining a license to operate a child care facility in this state.

20  Within CDSS, the Community Care Licensing Division ("CCLD") handles these duties.

21  11.     Defendant Will Lightbourne ("Lightbourne") is the current Director of CDSS.  He is

22  sued in his official capacity.

23  12.     Defendant Pat Leary ("Leary") is the current Chief Deputy Director of DSS and

24  oversees CCLD.  She is sued in her official capacity.

25  13.     Defendant Pamela Dickfoss ("Dickfoss") is the current Deputy Director of CCLD.

26  She is sued in her official capacity.

27

28

14.     Defendants CDSS, Lightbourne, Leary and Dickfoss shall be referred to collectively as "the State Defendants."

15.     Defendant YMCA of the East Valley ("YMCA") runs the Redlands Family YMCA. It is a California Corporation with its primary place of business in Redlands, California.

16.     The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1-100 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is in some manner legally responsible for the events and happenings herein referred to, which caused injury and damages to Plaintiff as herein alleged. Plaintiff prays leave of Court to amend this Complaint to show such true names and capacities when the same have been ascertained.

17.     Plaintiff is informed and believes, and on such information and belief alleges, that at all times mentioned herein, Defendants, and each of them, were the agents, servants, employees, and representatives of each of the other Defendants, and performed all acts and omissions stated herein within the scope of such agency or employment or representative capacity, and/or as part of a joint venture and common enterprise with one or more of the other Defendants, and are responsible in some manner for the acts and omissions of the other Defendants in proximately causing the damages complained of herein. All actions alleged herein were done with the knowledge, consent, approval and ratification of each of the Defendants herein, including their managing agents, owners, and representatives.

## FACTUAL ALLEGATIONS

18.     C.T. is an 8-year-old girl with cerebral palsy who uses a wheelchair for mobility.  She and her mother live in Redlands, CA.  C.T. has been enrolled at Franklin Elementary School in the Redlands Unified School District since approximately August 2016.  In August 2016, her mother, DELENA SERAFIN ("Ms. SERAFIN"), submitted an application to enroll C.T. in an extended care program through the Redlands Family YMCA, part of YMCA of the East Valley, for the mornings before and the afternoons following the school day.  The program was administered by

1  the YMCA on the site of Franklin Elementary School. In her application, Ms. SERAFIN noted that

2  her daughter has cerebral palsy and uses a wheelchair.

3      19.    The YMCA initially accepted C.T. into the program.  On August 10, 2016, the

4  morning of C.T.'s first day of school, Ms. SERAFIN took C.T. to meet the YMCA program staff.

5  The extended care program is operated in the auditorium for Franklin Elementary School.  The

6  location is accessible toand usable by persons with mobility disabilities.  C.T. was able to enter and

7  exit the auditorium in her wheelchair independently and without difficulty.  During the visit, Ms.

8  SERAFIN noted that the site director seemed a bit surprised that C.T. was using a wheelchair, but

9  nonetheless indicated that the facility could provide extended care to C.T.

10      20.    About an hour after leaving the YMCA, Ms. SERAFIN received a call from the

11  program director telling her that the program could not accept C.T. because she is a wheelchair

12  user.  Ms. SERAFIN asked the director why they had changed their mind after accepting C.T.,

13  given that she had disclosed her daughter's disability in the application.  The director told her that

14  the YMCA does not have the required license from the state regulatory agency to accept non-

15  ambulatory participants.  When Ms. SERAFIN told the program director that this left Ms.

16  SERAFIN without child care while she was at work, the director offered no alternative. The

17  director did not offer to seek the proper fire clearance from CDSS which would permit the YMCA

18  to accept C.T. as a program participant.  Nor did she offer any type of accommodation or

19  modification that would permit C.T. to participate in the YMCA's day care program.  Since that

20  time, Ms. SERAFIN has learned that many day care centers will accept a participant with a

21  disability and then make an application together with the family to the Inland Regional Center for a

22  personal assistant for the child while at the day care program.  The director for the YMCA did not

23  offer this solution to Ms. SERAFIN.

24      21.    C.T. had been excited to attend the program, particularly as it was on-site and would

25  likely be attended by her elementary school classmates.  When she learned that the YMCA had

26  refused to admit her to the program because she uses a wheelchair, C.T. became upset and cried

27  because she felt rejected and excluded.  C.T. has suffered and continues to suffer emotional injury,

28

1    embarrassment and feelings of exclusion because the YMCA will not accept her in its program due

2    to her disability.

3        22.    Because of the YMCA's exclusion of C.T., C.T.'s grandmother has had to care for

4    C.T. before and after school while Ms. SERAFIN is at work.  As a result of the YMCA's

5    discriminatory conduct, C.T. is segregated from her peers.

6        **CDSS's Regulations Regarding Nonambulatory Participants**

7        23.    CDSS's Regulation Interpretations and Procedures for Child Care Centers Evaluator

8    Manual states the following regarding Section 101161:

9

10   (a) If a licensed child care center (e.g., Head Start) wants to mainstream children with
         disabilities from a county-/school-operated program into the center, the center must
11       include the mainstreamed children in its capacity. This would be an increase-in-capacity
         request and, as such, a new fire clearance would be needed, as well as compliance with
12       all other requirements as set forth in Section 101185.

13       If children with disabilities only "mainstream" during outdoor activities, and there is
         adequate outdoor space for both groups (75 square feet per child), technically the center
14       needs to include the children with disabilities in its capacity. However, in order to allow
         "mainstreaming" to occur without placing unnecessary requirements on the licensee
15       (e.g., requiring increased indoor activity space when children with disabilities will not be
         using that space, etc.), the licensee may submit a plan to the Department that details its
16       proposal for ensuring that health and safety standards are met (e.g., adequate space,
         supervision, etc.). The Department will review and approve these plans on a case-by-case
17       basis.

18       Policy regarding bedridden children is as follows:

19

20       1.  The Uniform Building Code, Section 403, defines a bedridden person as "a person
             confined to a bed, requiring assistance in turning or unable to independently transfer
21           to and from bed, and unable to leave a building unassisted during emergency
             conditions." This does not apply to infants ages 0 to 2 years of age.

22       2.  Bedridden children shall be allowed in child care centers as long as the center does
23           not provide medical care to the child. No bedridden child shall be admitted to a child
             care center unless the center has secured a bedridden fire clearance.

24   (b) The Department is authorized to make determinations as to the ambulatory status of
         children. (See Section 101152n.(1) and Health and Safety Code Section 13131.) As
25       required by Section 101220, the ambulatory status of children shall be recorded in their
         medical assessment. However, the Department may require a reassessment if it believes
26       that the previous assessment of a child's ambulatory status in incorrect or that the
         assessment does not reflect the current ambulatory status of the child. To be considered
27       ambulatory, a child must meet all of the following criteria:

28

---

1.    The child is not dependent upon a mechanical aid such as a walker, crutches or wheelchair.

2.    The child is able to respond both physically and mentally to an audible or visual signal or oral instruction and to evacuate the building unassisted in an emergency situation.

24.    CDSS's Regulation Interpretations and Procedures for Child Care Centers Evaluator Manual states the following regarding Section 101169 APPLICATION FOR LICENSE:

POLICY

As places of public accommodation, licensed child care facilities have obligations under federal and state disability laws including Title III of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12181, et seq., and the California Unruh Civil Rights Act and California Disabled Persons Act (Civil Code Sections 51 et seq. and 54 et seq.). The Americans with Disabilities Act makes it illegal for places of public accommodation, which include child care facilities, to discriminate against a child with a disability. Under the Americans with Disabilities Act, an individual (including a child) is considered "disabled" if he/she has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment (meaning other people treat the individual as if he/she is disabled whether or not that is actually the case). For example, this might include a child who requires medication or services for conditions such as asthma, allergies, diabetes, epilepsy, or gastric tube feeding. A child care facility may not refuse outright to serve a child with a disability, but is required to undertake an individualized assessment of the situation if the facility receives a request to provide an accommodation for a child with a disability. A child care facility shall make reasonable accommodations as necessary to provide equal services to a child with a disability. However, a child care facility is not required to provide an accommodation if doing so would fundamentally alter the basic nature of the services it offers. The laws do not require an accommodation if the requested action would impose an undue burden. Applicants should be aware that it is the responsibility of each child care licensee to determine its legal obligations under the Americans with Disabilities Act and California disability laws. Child care applicants and licensees may want to consult with an attorney for advice.

PROCEDURE

Consistent with its policies, the Department allows the accommodation of children with disabilities in licensed child care facilities, including the provision of incidental medical services. . . .

25.    Nowhere in the regulations governing child care centers or the Evaluator Manual explaining those regulations does CDSS state that child care facilities must comply with Title III of the ADA by: a) removing barriers to physical access that existed prior to 1992 when readily achievable, and b) building and altering facilities after January 26, 1993 in compliance with the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") or the 2010 ADA Standards for Accessible Design (for facilities built or altered after March 15, 2010).  Nor do the regulations state that facilities must obtain a fire clearance that permits the participation of non-ambulatory

students in order to ensure that child care centers licensed by the state do not discriminate against children with mobility disabilities.

26.    On July 10, 2018, counsel for C.T. sent a letter to the State Defendants explaining why Section 101161 of Title 22 of the California Code of Regulations is discriminatory.  The letter requested that CDSS rescind the regulation and replace it with one requiring that licensed child care center licensees make their facilities accessible to persons with mobility disabilities and obtain a fire clearance for non-ambulatory participants.

27.    On August 1, 2018, counsel for CDSS sent a response to counsel for C.T.  In the letter, CDSS counsel claimed that the Department is reviewing the regulation.  But the Department did not make any commitment or even indicate that it intended to rescind the regulation or modify it to require that child care facilities comply with the ADA and provide full and equal access to children with mobility disabilities.  As of the date of filing this Complaint, CDSS has not agreed to rescind or modify Section 101161.

28.    Section 101161 is discriminatory and violates Title II of the ADA.  Public accommodations such as the YMCA, which rely on the regulation to justify their refusal to accept children with mobility disabilities, violate Title III of the ADA.  These ADA violations also constitute violations of the Unruh Civil Rights Act, Cal. Civ. Code § 51(f).

29.    C.T. attends third grade at Franklin Elementary School.  Because Ms. SERAFIN works during the day, C.T. needs child care in the morning before school and in the afternoon when the school day ends.  Unless and until CDSS rescinds Section 101161 or takes action to eliminate its discriminatory impact, C.T. will be excluded from participating in the extended care program and services at her school, and few, if any, licensed child care facilities across California will accept her.

## CLASS ALLEGATIONS

30.    The named Plaintiff brings her claim for declaratory and injunctive relief under Title II of the ADA against the State Defendants on behalf of herself and all persons similarly situated

1    and seeks class certification pursuant to Federal Rule of Civil Procedure 23(b)(2) as set forth

2    below.

3        31.    **Class Definition.**

4        Plaintiff C.T. seeks to represent the following class:

5
6        All children with disabilities who use wheelchairs, scooters, canes or other mobility
         aids and who reside in California and who have attempted or will attempt to enroll in
7        a child care program licensed by the State of California during the CLASS PERIOD.

8        32.    The CLASS PERIOD is defined as commencing three years prior to the filing of the

9    Complaint herein through the conclusion of this action.

10       33.    This action is brought as a class action and may properly be so maintained pursuant to

11   Federal Rule of Civil Procedure 23 and applicable case law.

12       34.    The requirements of Rule 23 of the Federal Rules of Civil Procedure are met with

13   regard to the proposed class as described below.

14               a.    The class is so numerous that joinder of all members is impracticable;

15               b.    There are questions of law and fact which are common to the class;

16               c.    The named Plaintiff's claims for declaratory and injunctive relief are typical

17                     of the claims of the class;

18               d.    The named Plaintiff will fairly and adequately represent common class

19                     interests and is represented by counsel who are experienced in law reform

20                     class actions and the disability rights issues in this case; and

21               e.    Defendants have acted or refused to act on grounds generally applicable to the

22                     class.

23       35.    **Numerosity**.  Each member of the class is a "qualified person with a disability"

24   pursuant to 42 U.S.C. § 12131(2).  The class is so numerous that joinder of all members is

25   impracticable. The number of children in California with mobility disabilities who have attempted

26   or will attempt to attend a licensed child care program likely exceeds 10,000 individuals.  Statistics

27   calculated by the Cornell University Yang Tan Institute using the U.S. Census Bureau's 2016

28

American Community Survey (ACS) Public Use Microdata Sample (PUMS) data estimate that in 2016 in California there were approximately 33,200 children ages 5 to 15 with "ambulatory disabilities." A child with an ambulatory disability was defined for purposes of the study as a child who "has serious difficulty walking or climbing stairs."

36.    **Common Questions.**  The common questions of law and fact, shared by the named Plaintiff and the class members, include but are not limited to:

  a.   Whether the State Defendants have subjected the named Plaintiff and the members of the putative class to discrimination on the basis of their disabilities;

  b.   Whether the State Defendants administer California's child care licensing program in a manner that subjects the named Plaintiff and the members of the putative class to discrimination on the basis of their disabilities in violation of Title II of the ADA and 28 C.F.R. § 35.130(b)(6);

  c.   Whether Title 22 of the California Code of Regulations, section 101161 establishes requirements for licensed child care programs in California that result in discrimination against the named Plaintiff and the putative class members on the basis of their disabilities in violation of Title II of the ADA and 28 C.F.R. § 35.130(b)(6);

  d.   Whether CDSS is a public entity within the meaning of Title II of the ADA;

  e.   Whether the named Plaintiff and the putative class members have been injured; and

  f.   Whether the named Plaintiff and the members of the putative class are entitled to declaratory and/or injunctive relief, and the nature of such relief.

37.    **Typicality.**  The claims of the named Plaintiff are typical of those of the proposed class.  Plaintiff's claims are typical of the claims of the proposed class in the following ways: 1) Plaintiff is a member of the proposed class; 2) Plaintiff's claims arise from the same regulations, policies, procedures, practices and course of conduct on the part of the State Defendants;

1  3) Plaintiff's claims are based on the same legal and remedial theories as those of the proposed

2  class and involve similar factual circumstances; 4) the injuries suffered by the named Plaintiff are

3  similar to the injuries suffered by the proposed class members; and 5) the relief sought herein will

4  benefit the named Plaintiff and all class members alike.

5       38.   **Adequacy:** Named Plaintiff will fairly and adequately represent the interests of the

6  class.  She has no interests adverse to the interests of other members of the class and has retained

7  counsel who are competent and experienced in litigating complex class actions, including large-

8  scale disability rights class action cases.

9       39.   **The Class Meets the Requirements of Federal Rule of Civil Procedure 23(b)(2):**

10  The State Defendants have acted and refused to act on grounds generally applicable to the class,

11  making the declaratory and injunctive relief sought on behalf of the class as a whole appropriate.

12

13
**FIRST CLAIM FOR RELIEF**<br>**Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131** *et seq.*<br>**On Behalf of Plaintiff and the Proposed Class**<br>**Against the State Defendants**

14

15       40.   Plaintiff incorporates by reference as though fully set forth herein the preceding

16  paragraphs of this Complaint.

17       41.   Congress enacted the ADA upon finding, among other things, that "society has

18  tended to isolate and segregate individuals with disabilities" and that such forms of discrimination

19  continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

20       42.   Congress explicitly stated that the purpose of the ADA is to provide "a clear and

21  comprehensive national mandate for the elimination of discrimination against individuals with

22  disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against

23  individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

24       43.   Pursuant to Title II of the ADA, 42 U.S.C. § 12132, no qualified individual with a

25  disability shall, by reason of such disability, be excluded from participation in or be denied the

26  benefits of the services, programs or activities of a public entity, or be subjected to discrimination

27  by any such entity.

28

1    44.    Plaintiff C.T. is a qualified individual with a disability as defined under 42 U.S.C. §

2    12132(2).

3    45.    CDSS is and was at all relevant times a "public entity" covered by Title II of the

4    ADA and its accompanying regulations.

5    46.    The acts and omissions alleged herein constitute violations of Title II of the

6    Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131 *et seq.*, and the regulations

7    promulgated thereunder.  The State Defendants' discriminatory conduct alleged herein includes,

8    *inter alia*:

9                    a.    Denying children with mobility disabilities the opportunity to participate in or

10                        benefit from the aid, benefit or service of child care programs within the state

11                        by employing licensing standards that have a significant discriminatory

12                        impact on such children in violation of 28 C.F.R. § 35.130(b)(1)(i);

13                   b.    Affording children with mobility disabilities an opportunity to participate in or

14                        benefit from licensed child care services that are not equal to those afforded to

15                        others in violation of 28 C.F.R. § 35.130(b)(1)(ii);

16                   c.    Using criteria or methods of administration that subject children with mobility

17                        disabilities to discrimination on the basis of their disabilities in violation of 28

18                        C.F.R. § 35.130(b)(3)(i);

19                   d.    Administering its licensing and certification program for child care centers in

20                        a manner that subjects qualified individuals with disabilities to discrimination

21                        on the basis of disability in violation of 28 C.F.R. § 35.130(b)(6);

22                   e.    Refusing to make reasonable modifications in its licensing policies, practices

23                        or procedures that would require licensed child care centers in California to

24                        obtain fire clearances that permit the participation of children with mobility

25                        disabilities in violation of 28 C.F.R. § 35.130(b)(7)(i);

26                   f.    Imposing eligibility criteria that screen out or tend to screen out children with

27                        mobility disabilities from fully and equally enjoying the services, programs

28

CLASS ACTION COMPLAINT
*C.T by and through her Guardian Ad Litem, Delena Serafin v. California Dept. of Social Services, et al.*
12

and activities of licensed child care facilities in violation of 28 C.F.R.

§ 35.130(b)(8);

g.    Administering its child care licensing program in a manner that results in the

segregation of children with mobility disabilities in violation of 28 C.F.R.

§ 35.130(d).

47.    On July 10, 2018, C.T.'s counsel sent a letter to the State Defendants explaining why Section 101161 of Title 22 of the California Code of Regulations is discriminatory.  The letter requested that the State Defendants rescind the regulation and replace it with one requiring that child care center licensees make their facilities accessible to persons with mobility disabilities and obtain a fire clearance for non-ambulatory participants.  To date, the State Defendants have not committed to rescind or otherwise modify the discriminatory regulation.  As a result, C.T. is excluded from participating in the extended care program at her school and child care programs across the state.  The acts of the State Defendants have proximately caused and will continue to cause irreparable injury to C.T. if not enjoined by this Court.

48.    Pursuant to Section 12133 of the ADA, as a result of such discrimination in violation of § 12132 of the ADA, Plaintiff is entitled to the remedies, procedures and rights set forth in Section 505 of the Rehabilitation Act of 1973 (29 USC § 794a).

49.    WHEREFORE, Plaintiff requests relief as outlined below.

**SECOND CLAIM FOR RELIEF**
**Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181 *et seq.***
**Against Defendant YMCA**

50.    Plaintiff incorporates by reference as though fully set forth herein the preceding paragraphs of this Complaint.

51.    Title III of the ADA provides in pertinent part: "[N]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

1  accommodation by any person who owns, leases, or leases to, or operates a place of public

2  accommodation."  42 U.S.C. § 12182.

3      52.    Plaintiff is a qualified individual with disabilities within the meaning of the ADA.

4      53.    Defendant YMCA is a "private entity," as defined under 42 U.S.C. § 12181(6).  It

5  operates licensed child care centers at approximately thirteen locations within the Redlands Unified

6  School District in Redlands, California.  These facilities are "public accommodations" pursuant to

7  42 U.S.C. § 12181(7)(K).  Defendant YMCA is subject to Title III of the ADA and its

8  accompanying regulations.

9      54.    The acts and omissions alleged herein constitute violations of Title III of the

10  Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181 *et seq.*, and the regulations

11  promulgated thereunder.  Defendant YMCA's discriminatory conduct alleged herein includes, *inter*

12  *alia*:

13      a.    Failing to provide children with mobility disabilities an equal opportunity to

14          participate in its child care program with nondisabled children, in violation of

15          42 U.S.C. § 12182(b)(1)(A)(i);

16      b.    Failing to provide the goods, services, facilities, privileges, advantages, and

17          accommodations at its child care centers to children with mobility disabilities

18          in the most integrated setting possible, in violation of 42 U.S.C.

19          § 12182(b)(1)(B);

20      c.    Utilizing standards, criteria and methods of administration that have the effect

21          of discriminating against children on the basis of their mobility disabilities, in

22          violation of 42 U.S.C. § 12182(b)(1)(D);

23      d.    Imposing eligibility criteria that screen out children with mobility disabilities

24          and deny them full and equal access to and enjoyment of the YMCA's goods,

25          services, facilities, privileges, advantages, and/or accommodations in violation

26          of 42 U.S.C. § 12182(b)(2)(A)(i); and

27      e.    Failing to make reasonable modifications in its policies, practices, and

28

CLASS ACTION COMPLAINT
*C.T by and through her Guardian Ad Litem, Delena Serafin v. California Dept. of Social Services, et al.*
14

procedures which are necessary for children with mobility disabilities to have full and equal access to and enjoyment of the YMCA's goods, services, facilities, privileges, advantages and/or accommodations, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii).

55.    As a direct and proximate result of the aforementioned acts, Plaintiff has suffered and continues to suffer irreparable harm including humiliation, hardship and anxiety due to Defendant's failure to provide full and equal access to and enjoyment of its facilities, services, goods, privileges, advantages and accommodations.

56.    WHEREFORE Plaintiffs pray for judgment as set forth below.

### THIRD CLAIM FOR RELIEF
**Unruh Civil Rights Act, California Civil Code §§ 51 *et seq.***
**Against Defendant YMCA**

57.    Plaintiff incorporates by reference as though fully set forth herein the preceding paragraphs of this Complaint.

58.    California Civil Code § 51(b) provides in pertinent part that "All persons within the jurisdiction of this state are free and equal, and no matter what their…disability or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

59.    The YMCA owns, operates and/or manages a business establishment within the meaning of the Unruh Civil Rights Act.  The YMCA provides and sells its services, privileges, advantages and accommodations to the general public.

60.    Plaintiff is a person with a disability within the meaning of the Unruh Act.

61.    On the basis of Plaintiff C.T.'s disability, Defendant YMCA refused to provide her with full and equal access to and enjoyment of its benefits, goods, services, facilities, advantages, and accommodations, specifically its child care facilities.  The YMCA's discrimination against Plaintiff was intentional.

62.    Additionally, under California Civil Code § 51(f), a violation of the ADA also constitutes a violation of California Civil Code §§ 51 *et seq.*  As outlined under Plaintiff's Second

1   Claim for Relief above, Defendant YMCA has violated Title III of the ADA by excluding Plaintiff

2   C.T. and denying her full and equal access to and enjoyment of its licensed child care program on

3   the basis of her disability.

4       63.    As a direct and proximate result of the aforementioned acts, Plaintiff C.T. has

5   suffered and will continue to suffer injury, including humiliation, hardship and anxiety due to

6   Defendant's discriminatory exclusion of C.T. from its child care program.

7       64.    WHEREFORE Plaintiff requests relief as outlined below.

8       **ALLEGATIONS SUPPORTING DECLARATORY AND INJUNCTIVE RELIEF**

9       65.    Plaintiff incorporates by reference as though fully set forth herein the preceding

10  paragraphs of this Complaint.

11      66.    Plaintiff C.T. is 8 years old and continues to require child care before and after the

12  school day.  Section 101161 of Title 22 of the California Code of Regulations discriminates against

13  children with mobility disabilities and has a discriminatory impact on them with respect to their

14  opportunities to have full and equal access to and enjoyment of the benefits of child care programs

15  and facilities.  Unless and until the State Defendants rescind Section 101161, Plaintiff and the

16  members of the proposed class will continue to be denied full and equal access to and enjoyment of

17  licensed child care programs and services in California as a result of their mobility disabilities.

18  Unless and until the State Defendants require as a condition of licensing that child care centers

19  obtain fire clearances to permit the participation of non-ambulatory children, Plaintiffs and the

20  members of the proposed class will continue to be denied full and equal access to and enjoyment of

21  the child care services, goods, facilities, privileges, advantages and accommodations provided to

22  children without mobility disabilities.  Children with mobility disabilities will continue to be

23  excluded from licensed child care facilities throughout the state and segregated in violation of the

24  ADA's integration mandate.

25      67.    Unless and until Defendant YMCA is required to accept children with mobility

26  disabilities and obtain a non-ambulatory fire clearance for its licensed child care facilities, Plaintiff

27

28

will be excluded from and denied full and equal access to and enjoyment of Defendant YMCA's child care program because of her disability.

68.    A present and actual controversy exists regarding the respective rights and obligations of Plaintiff and Defendants.  Plaintiff desires a judicial determination of her rights and Defendants' obligations in a declaration as to whether, and to what extent, Defendants' conduct violates applicable law.

69.    Such a declaration is necessary and appropriate at this time in order that Plaintiff and the members of the proposed class may ascertain their rights.  Such a declaration is also necessary and appropriate to prevent further harm or infringement of the rights of Plaintiff and the members of the proposed class.

70.    Plaintiff and the members of the proposed class have no adequate remedy at law for the harm to them arising from the conduct alleged herein.  Unless and until Defendants are preliminarily and permanently enjoined from engaging in such conduct, Plaintiff and the members of the proposed class will continue to suffer irreparable harm as a result of Defendants' violations of the ADA as alleged herein.

71.    Plaintiff and the members of the proposed class are entitled to declaratory and injunctive relief under Title II of the ADA against the State Defendants.  Plaintiff is entitled to declaratory and injunctive relief under Title III of the ADA and the Unruh Act against Defendant YMCA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

*Under Title II of the ADA Against the State Defendants*

1.    Declaratory judgment that the State Defendants' conduct violates the rights of the named Plaintiff and the proposed class members under the ADA, § 42 U.S.C. 12131 *et seq*., and the regulations promulgated thereunder;

2.    Preliminary and permanent injunctions requiring the State Defendants to come into full compliance with the requirements of the ADA and its implementing regulations by rescinding

1 | or modifying Section 101161 of Title 22 of the California Code of Regulations and replacing it

2 | with a regulation that requires child care facilities to comply with the ADA and obtain non-

3 | ambulatory fire clearance prior to issuance or renewal of a child care license;

4 | *Under Title III of the ADA Against Defendant YMCA*

5 | 3.    Declaratory judgment that Defendant YMCA's refusal to admit Plaintiff C.T. to its

6 | licensed child care program and failure to provide full and equal access to and enjoyment of its

7 | goods, services, facilities, benefits, advantages and accommodations because of C.T.'s disability

8 | violates her rights under the Title III of the ADA, 42 U.S.C. §§ 12181 *et seq.*, and the regulations

9 | promulgated thereunder;

10 | 4.    Preliminary and permanent injunctions requiring Defendant YMCA to come into

11 | full compliance with the requirements of Title III of the ADA and its implementing regulations, to

12 | obtain a non-ambulatory fire clearance for its licensed child care programs, and to admit C.T. into

13 | its extended care program at Franklin Elementary School;

14 | *Under the Unruh Act Against Defendant YMCA*

15 | 5.    Declaratory and injunctive relief;

16 | 6.    Damages pursuant to Cal. Civ. Code § 52(a), including treble damages;

17 | 7.    Pre-judgment and post-judgment interest according to law;

18 | *Under Both Claims Against All Defendants*

19 | 8.    All costs of this proceeding, including reasonable attorneys' fees, costs and

20 | litigation expenses, as provided by law; and

21 | 9.    For such other relief as the Court may deem just and proper.

22 |

23 | Respectfully submitted,

24 | DATED:  August 8, 2018                    SCHNEIDER WALLACE
COTTRELL KONECKY
25 | WOTKYNS, LLP

26 | By:    */s/ Sarah Colby*
                                                             Sarah Colby
27 | *Attorney for Plaintiff*

28 |

---

CLASS ACTION COMPLAINT
*C.T by and through her Guardian Ad Litem, Delena Serafin v. California Dept. of Social Services, et al.*
18

1

**DEMAND FOR JURY**

2

Plaintiff hereby demands a jury for all claims for which a jury is permitted.

3

4

DATED:  August 8, 2018                    SCHNEIDER WALLACE
                                          COTTRELL KONECKY
5                                          WOTKYNS, LLP

6

By:   */s/ Sarah Colby*
7                                                Sarah Colby
                                                 *Attorney for Plaintiff*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT
*C.T by and through her Guardian Ad Litem, Delena Serafin v. California Dept. of Social Services, et al.*
2