JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 18-1655 JGB (KKx)** | Date | March 1, 2021 |
|---|---|---|---|
| Title | ***C.T. v. California Department of Social Services, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ & NOE PONCE | PHYLLIS A. PRESTON |
|---|---|
| Deputy Clerks | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Mark Thomas Johnson | Amber L. Roller |
| | Benjamin G. Diehl |

**Proceedings:    Order (1) GRANTING Plaintiff's Motion for a Service Award (Dkt. No. 69); (2) GRANTING Plaintiff's Motion for Award of Attorneys' Fees and Expenses (Dkt. No. 70); and (3) GRANTING Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 73.)**

Before the Court are three Motions: Plaintiff's Motion for a Service Award; Plaintiff's Motion for Attorneys' Fees and Expenses; and Plaintiff's Motion for Final Class Action Settlement Approval. ("Motion for Service Award," Dkt. No. 69; "Motion for Attorneys' Fees," Dkt. No. 70; "Motion for Final Approval," Dkt. No. 73.)  The Court held a final approval hearing via telephone on March 1, 2021.  After considering the papers filed in support of the matter, as well as oral argument, the Court GRANTS all three Motions.

## I.    BACKGROUND

Plaintiff C.T. is a ten-year-old with cerebral palsy who uses a wheelchair for mobility. (Dkt. No. 61-1 ¶ 10.)  In the summer of 2016, after she had initially been accepted to participate in a childcare program offered through YMCA of the East Valley located at her elementary school, the YMCA informed C.T.'s mother, Delena Serafin, that the program could not accept C.T. because she used a wheelchair.  (Id.)  The YMCA told Ms. Serafin that it did not have the required license to accept non-ambulatory children under state regulations, and it was not willing to seek the proper fire clearance that would allow C.T. to participate in its program.  (Id.)  The specific regulation at issue was Title 22 of the California Code of Regulations, Section 101161, which provided in relevant part that "[c]hild care centers or rooms approved for ambulatory children only shall not be used by nonambulatory children."  (Id. ¶ 11.)

On August 8, 2018, Plaintiff C.T. filed a complaint against Defendants California Department of Social Services, Will Lightborne, Pat Leary, Pamela Dickfoss (collectively, "State Defendants"), YMCA of the East Valley, and Doe Defendants on behalf of herself and a putative class of non-ambulatory children. ("Complaint," Dkt. No. 1.) Plaintiff alleged that Section 101161 discriminated against children with mobility disabilities in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et. seq. ("Title II"). (Complaint pp. 1-2.) Plaintiff also sought damages and injunctive relief against the YMCA of the East Valley to enjoin it from relying on state licensing regulations she alleged were in violation of Title III of the ADA, 42 U.S.C. § 12181 et. seq. ("Title III"), and the Unruh Civil Rights Act, Cal. Civ. Code § 51 et. seq. ("Unruh Act"). (Id.)

On October 5, 2018, State Defendants filed an Answer denying all liability. (Dkt. No. 23.) On October 10, 2018, YMCA of the East Valley did the same. (Dkt. No. 24.) On November 19, 2018, the parties began settlement negotiations. (Dkt. No 61-1 ¶ 23.) By January 1, 2019, State Defendants agreed to seek repeal of Section 101161. (Dkt. No. 35 p. 1.) Effective June 17, 2019, State Defendants amended Section 101161, which now "merely prohibits child care licensees from operating a child care center beyond the conditions and limitations specified on the license." (Dkt. Nos. 42, 61-1 ¶ 26.) In March 2020, the parties finalized a prospective settlement agreement, which acknowledges the repeal of Section 101161 and confirms that the YMCA has obtained fire clearance for non-ambulatory children in its childcare programs. (Dkt. No. 61-1 ¶¶ 28-32.)

On October 29, 2020, the Court granted preliminary approval of the class settlement and set a schedule for class notice. (Dkt. No. 64.) On December 14, 2020, Plaintiff filed the Motion for Service Award. (Dkt. No. 69.) In support of the Motion for Service Award, Plaintiff filed a Declaration of Delena Serafin. ("Serafin Declaration," Dkt. No. 69-1.)

Also on December 14, 2020, Plaintiff filed the Motion for Attorneys' Fees and Costs. (Dkt. No. 70.) In support of the Motion for Attorneys' Fees, Plaintiff also filed:

- Declaration of Guy B. Wallace ("First Wallace Declaration," Dkt. No. 70-1); and
- Exhibits A-G to the Wallace Declaration, (Dkt. Nos. 70-2 – 70-8.)

The same day, State Defendants filed certification that they disseminated class notices, accompanied by a declaration from Chana Wynne Swan. (Dkt. No. 71.)

On February 16, 2021, Plaintiff filed the Motion for Final Approval. (Dkt. No. 73.) In support of the Motion for Final Approval, Plaintiff also filed:

- Declaration of Guy B. Wallace ("Second Wallace Declaration," Dkt. No. 73-1); and
- Exhibit A to the Second Wallace Declaration (Dkt. No. 73-2).

Plaintiff also filed a Notice for an Order Approving Minor's Compromise, noticed for hearing on March 22, 2021. (Dkt. No. 74.)

## II.   THE SETTLEMENT AGREEMENT

The parties' settlement agreement is described in detail in the Court's October 29, 2020 Order.  (Dkt. No. 64.)  The settlement agreement itself (the "Agreement") is also in the record.  (See Agreement, Dkt. No. 61-1, Exh. A.)

### A.  Financial Terms

There is no classwide monetary relief in the Agreement—Plaintiff brought a class action for declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2).  (See Complaint, Agreement.)  Plaintiffs' Motion for Attorneys' Fees is considered separately.

### B.  Settlement Class Members

The Settlement Class includes: "All children with mobility disabilities between the ages of three (3) and seventeen (17) who use wheelchairs, scooters, canes or other mobility aids and who reside in California and who have attempted or will attempt to enroll in a child care program licensed by the State of California."  (Agreement § 3.1.)  The relief provided to the class in the Agreement is limited to equitable relief.  (Agreement § 3.2.)

### C.  Class Representative

The Agreement awards $1,000 to Plaintiff C.T. as a service award.  (Agreement § 6.1.)  This award is separate from C.T.'s claims for damages.  (Id.)  The Agreement remains in full force and effect if the Court declines or reduces the service award.  (Id. § 6.3.)

### D.  Settlement Administration Costs

Costs associated with class notice were borne by State Defendants.  (Dkt. No. 71.)  There is no classwide monetary settlement requiring distribution.

### E.  Injunctive Relief

Effective June 17, 2019, State Defendants amended Title 22, California Code of Regulations, section 101161 "to remove any alleged discriminatory effect."  (Agreement § 4.1.1.)  State Defendants agree to refrain from reinstating Section 101161 as it existed at the time the Complaint was filed as well as adopting any future regulation with the effect of permitting licensed child care centers to deny access to disabled children on the basis that rooms are only approved for ambulatory children.  (Id.)  Additionally, Defendant YMCA confirms it has obtained non-ambulatory fire clearance for its licensed childcare programs.  (Id. at § 4.1.2.)  Section 101161 used to read, in relevant part: "Child care centers or rooms approved for ambulatory children only shall not be used by nonambulatory children. . . . Children whose condition becomes nonambulatory shall not use rooms or areas restricted to ambulatory

children."  22 CCR § 101161 (2018).  Section 101161 now reads: "A licensee shall not operate a child care center beyond the conditions and limitations specified on the license, including the capacity limitation."  22 CCR § 101161.

## F. Release

Under the Agreement, settlement class members release claims against Defendants "for injunctive or declaratory relief based on the claims asserted in the Complaint or claims that could have been asserted based on the facts alleged in the Complaint on behalf of the Class[.]" (Agreement § 8.1.2.)  Plaintiff C.T. additionally releases claims for damages in exchange for a monetary settlement.  (Wallace Declaration ¶¶ 35-36.)  Though Plaintiff receives damages where unnamed class members receive none, the Agreement does preclude class members who have suffered the same exclusion as Plaintiff to receive a similar monetary damage award in an individual suit.  The only claims released are claims that have been effectively and productively addressed by Plaintiff and class counsel in their achievement of injunctive relief (and a change in law) for the class.

## G. Notice

The parties used two forms of class notice, a short form and a long form.  (Exhibits A and B to Agreement.)  Per the Agreement, the State Defendants were responsible for disseminating class notice and for paying costs of notice.  (Agreement § 7.2.)  State Defendants certify that they have disseminated notice according to the Agreement.  (See Dkt. No. 71.)

### III.   LEGAL STANDARD

## A. Class Action Settlement

Class action settlements must be approved by the Court.  See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge."  Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  A strong judicial policy favors settlement of class actions.  Id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness. Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).  Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement.  Hanlon, 150 F.3d at 1026.  "The settlement must stand or fall in its entirety."  Id.

In order to approve a class action settlement, the court must conduct a three-step inquiry. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).  First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act.

Id. Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Id. Finally, the court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). Id.

## B. Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal Rules of Civil Procedure. While the rule specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees. "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give[] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." MRO Commc'ns, Inc. v. AT&T Co., 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees. See Newberg on Class Actions § 14.1 (4th ed. 2005) ("Two significant exceptions [to the 'American Rule'] are statutory fee-shifting provisions and the equitable common-fund doctrine"). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h). Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

## IV. DISCUSSION

## A. Class Action Fairness Act ("CAFA")

When settlement is reached in certain class action cases, CAFA requires as follows:

Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official . . .

28 U.S.C. § 1715(b). A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d). Defendants have certified that, on October 13, 2020, they served notice of the Agreement, with copies of the required documents, on the United States Attorney General

and all appropriate state officials.  (Dkt. No. 66.)  Notice was served more than 90 days before the date of the final approval hearing on March 1, 2021.  Notice contained the information required by 28 U.S.C. § 1715(b) and was timely served in the manner required.  Accordingly, the CAFA notice requirements have been satisfied.

## B.  Rule 23(a) and (b) Requirements

In its October 29, 2020 Order, the Court certified a provisional settlement class under Rule 23(b)(3).  (Dkt. No. 64.)  The Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)."  <u>Adoma v. Univ. of Phoenix, Inc.</u>, 913 F. Supp. 2d 964, 974 (E.D. Cal. 2012); <u>see also</u> <u>Harris v. Vector Marketing</u>, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); <u>In re Apollo Group Inc. Securities Litigation</u>, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012).  Here, the Settlement Class has not changed since it was conditionally certified.  All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Settlement Class.

## C.  Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement.  Fed. R. Civ. P. 23(e)(1).

In its October 29, 2020 Order, the Court approved the notice sent to Settlement Class Members.  (Dkt. No. 64.)  State Defendants have certified that notice has occurred in exactly the way prescribed.  (Dkt. No. 71.)

## D.  Fair, Reasonable, and Adequate

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  <u>Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco</u>, 688 F.2d 615, 624 (9th Cir. 1982).  The Court's inquiry is procedural in nature.  <u>Id.</u>  Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Court held a final approval hearing by telephone on March 1, 2021.

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk MG/NP
                                                                                                 Time 00:04

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

> (1) the strength of the plaintiff's case;
> (2) the risk, expense, complexity, and likely duration of further litigation;
> (3) the risk of maintaining class action status throughout the trial;
> (4) the amount offered in settlement;
> (5) the extent of discovery completed, and the stage of the proceedings;
> (6) the experience and views of counsel;
> (7) the presence of a governmental participant; and
> (8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exhaustive, and a court may balance and weigh different factors depending on the circumstances of each case. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1.  Strength of Plaintiff's Case

The initial fairness factor addresses Plaintiff's likelihood of success on the merits. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964-65 (9th Cir. 2009). In determining the probability of Plaintiff's success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965. Plaintiff and the class have a strong case. However, this case "involved novel applications of federal and state civil rights statutes to child care and fire safety regulations." (Motion for Final Approval at 12.) A favorable result was far from automatic; it was instead obtained through skilled advocacy. This factor favors approval.

### 2.  Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)). Litigation carries inherent risks, and the parties' settlement affords significant relief that may never have materialized had the parties gone to trial instead of settling. Accord Californians for Disability Rights, Inc. v. Cal. Dept. of Transp., No. 4:06-cv-05125-SBA, 2010 WL 2228531, at *3 (N.D. Cal. June 2, 2010). This factor favors approval.

### 3. Relief Offered in Settlement

Plaintiff and her counsel have obtained excellent results for the Settlement Class. Plaintiff's Complaint identified a regulation discriminatory to children who use wheelchairs. Effective June 17, 2019, State Defendants amended Title 22, California Code of Regulations, section 101161 to eliminate its discriminatory effect. (Dkt. No. 42 at 3.) State Defendants have also agreed to refrain from reinstating the code section as it existed before June 2019, and from adopting any future regulation that has the effect of permitting licensed child care centers to deny access to children with mobility disabilities on the basis that the centers or rooms are only approved for ambulatory children. Agreement at § 4.1.1. In addition, as a result of the Settlement, the YMCA has confirmed that it has obtained a non-ambulatory fire clearance for its licensed childcare programs. Id. at § 4.1.2. It is rare that litigation produces such a happy ending.

### 4. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). This reliance is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995). Here, Class Counsel are qualified and experienced, with extensive experience serving as counsel in contested class actions. See Preliminary Approval Order, Dkt. No. 64 at 8-9 (citing Dkt. 61-1 at ¶¶ 6-8). That they recommend approval supports such a finding.

### 5. Presence of a Government Participant

Although State Defendants are government entities, this factor chiefly concerns situations in which the government prosecutes an action. Hanlon, 150 F.3d at 1026-28. Accordingly, this factor is neutral.

### 6. Any Opposition by Class Members

The existence of overwhelming support for a settlement agreement by the class lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). No class member has objected to the settlement. (See Second Wallace Declaration ¶ 34.) Thus, this factor favors approval.

On balance, the factors support final approval of the Agreement. The Agreement is fair, adequate, and reasonable.

### C.  Attorneys' Fees and Costs

#### 1.  Attorneys' Fees and Costs

Class Counsel's calculated lodestar is $268,839.00 in labor with a total fees-and-costs amount of $270,161.75.  (Motion for Attorneys' Fees at 20.)  However, pursuant to the Settlement Agreement, Counsel moves for a lower amount: $125,000.00.  (Id.)  Courts are obligated to ensure that the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on an amount.  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

Generally, the Court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method.  Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002).  In actions for injunctive relief, the lodestar method is most appropriate.  Muniz v. United Parcel Serv., Inc., 738 F.3d 214, 222 (9th Cir. 2013).  A lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  McGrath v. Cty. of Nevada, 67 F.3d 248, 252 (9th Cir. 1995).  The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  Next, the Court must decide whether to adjust the "presumptively reasonable" lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation, Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028-29 (9th Cir. 2000).

Class Counsel submits thorough and detailed records of attorney qualifications, relevant hourly rates, and hours worked.  (See Motion for Attorneys' Fees.)  In addition, as an exhibit to the Frist Wallace Declaration, Counsel has submitted the Declaration of Richard Pearl, an expert on fee awards and hourly rates of attorneys throughout California.  (See First Wallace Declaration, Exh. D.)  Though Class Counsel's rates appear high, they have been approved by other courts in similar cases.  (See Nevarez v. Forty Niners Football Co., LLC, No. 16-CV-07013-LHK, 2020 WL 4226517, at *6 (N.D. Cal. July 23, 2020); First Wallace Declaration ¶ 48.) The Court thus finds Class Counsel's lodestar reasonable, and thus finds Counsel's requested award of $125,000.00 reasonable and justified.

#### 2.  Service Award

In the Motion for Service Award, Plaintiff requests a service award of $1,000.00 for named Plaintiff C.T., by and through her mother and guardian ad litem Delena Serafin.  The trial court has discretion to award incentives to class representatives.  See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); Pelletz v. Weyerhaeuser Co., 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009).  The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class

action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. <u>Van Vranken v. Atl. Richfield Co.</u>, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiff's requested service award is appropriate given her extensive participation in this matter, which included numerous meetings, interviews, and Plaintiff's review of critical documents. Indeed, Ms. Serafin "was directly involved with evaluating and providing input into and agreeing to the terms of the class settlement." (Motion for Service Award at 7, citing Serafin Declaration ¶¶ 8-15.) Plaintiff C.T.'s contribution to this litigation has had a substantial impact on the options afforded to other children with mobility disabilities. Her requested service award is granted.

## V.    CONCLUSION

For the reasons above, the Court GRANTS Plaintiff's Motion for Final Approval; Plaintiff's Motion for Attorneys' Fees; and Plaintiff's Motion for a Service Award. The Court:

(1) GRANTS final settlement approval;
(2) GRANTS the request for attorneys' fees and costs and AWARDS Class Counsel attorneys' fees in the amount of $125,000.00;
(3) GRANTS the request for an incentive award and AWARDS $1,000.00 to Plaintiff C.T., by and through her guardian ad litem Delena Serafin;
(4) DISMISSES the Complaint WITH PREJUDICE.

**IT IS SO ORDERED.**